UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BENJAMIN PENZICK, <br><br> Plaintiff, <br><br> v. <br><br> CONSTRAFOR, INC., <br><br> Defendant. | No. 25 C 4555 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Benjamin Penzick alleges that Constrafor, Inc. failed to pay him commissions he earned for selling Contrafor's software products. Penzick brings claims for breach of contract and violation of the Illinois Sales Representative Act. Constrafor moves to dismiss the Sales Representative Act (the "Act") claim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). That motion is denied.

**Legal Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The complaint must set forth "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are unnecessary, mere legal conclusions or a formulaic recitation of the elements of a cause of action are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must provide some specific facts to support the legal claims asserted in the complaint. *Green Plains Trade Group, LLC v. Archer Daniels Midland*

*Co.*, 90 F4th 919, 926 (7t Cir. 2024). The alleged facts must be sufficient to state a claim to relief that is plausible on its face, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and to provide the defendant with fair notice of the claim and the basis for it. *Twombly*, 550 U.S. at 555. In evaluating the motion, the court must construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded facts as true, and draw all reasonable inferences in the plaintiff's favor. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014).

## Background

Penzick alleges that Constrafor "is a software and fintech company that develops and sells construction software products and financing to general contractors and subcontractors." *See* R. 1 ¶ 4. Penzick worked for Constrafor pursuant to a consulting agreement selling Contrafor's "construction software to construction companies." *See* R. 1-1; R. 1 ¶ 9. Under the agreement, Penzick was as an independent contractor responsible for selling Constrafor's "software" and "Early Payment Program." R. 1 ¶ 17. The complaint does not provide further detail about the characteristics of the "software" or the "Early Payment Program." The agreement provided that Penzick would earn the following "commissions":

| Customer Revenue | Software | EPP |
|---|---|---|
| $100-250 million | $5,000 | $40,000 |
| $250-750 million | $10,000 | $100,000 |
| $750 million plus | $20,000 | $200,000 |

R. 1-1 at 14. Penzick alleges that he sold an "EPP" to a customer with revenue of more than $750 million but Contrafor failed to pay him the $200,000 commission called for by the agreement. *See* R. 1 ¶¶ 20-28.

2

**Analysis**

I.  **Commissions**

Under the Act, "'Commission' means compensation accruing to a sales representative for payment by a principal, the rate of which is expressed as a percentage of the dollar amount of orders or sales or as a percentage of the dollar amount of profits." 820 ILCS 120/1(1). The parties' contract described the payments at issue as "commissions," but not expressly in the form of percentages. Constrafor argues that that the contractual payments "are not 'commissions' as defined in the [Act]," but rather are a "flat fee based on the size of the customer's revenue stream." R. 14 at 8.

Generally, a commission is a payment per sale. *See* Black's Law Dictionary 327 (10th ed. 2014) (a commission is "a fee paid to an agent or employee for a particular transaction, usually as a percentage of the money received from the transaction"). Here, the contract provides that Penzick was to receive a "commission" for every sale he made. The contract does not express the amount of the payment in terms of a percentage, but the payment is of course necessarily a percentage of the sale. Furthermore, the contractual commission increases as the size of the customer's revenue increases. Presumably, this is because the larger the customer the greater the number of "copies" of Constrafor's software the customer will require and pay for. While this is not a strict and linear percentage, the terms of the contract make it plausible that Penzick's commission is akin to a percentage of sales. Discovery may

3

reveal facts to the contrary. But the Court will not dismiss Penzick's claim under that Act at this point in the proceedings for failure to allege a commission due.

## II. Principals and Products

To be liable under the Act, a defendant must be a "principal," meaning "a sole proprietorship, partnership, corporation or other business entity . . . which . . . manufactures, produces, imports, or distributes a product for sale." 820 ILCS § 120/1(3)(A). Constrafor emphasizes the term "product" in this definition and argues that it is not a "principal" for purposes of the Act, because courts have held that a "product" must be a "tangible good." To support this argument, Constrafor cites an Illinois Supreme Court case from 1981 applying the Illinois Tax Code and holding that software is intangible property. *See* R. 9 at 9 (citing *First Nat'l Bank of Springfield v. Dep't of Revenue*, 421 N.E.2d 175, 177 (Ill. 1981)).

This is an obsolete perspective. The Illinois legislature recently amended the Illinois Tax Code to provide that "software is considered to be tangible personal property regardless of the form in which it is transferred or transmitted, including tape, disc, card, electronic means, or other media." *See* 86 ILAC § 130.1935. Moreover, many courts since the 1981 decision of the Illinois Supreme Court have recognized software as a product or tangible good. *See Garcia v. Character Tech. Inc.*, 2025 WL 1461721 (M.D. F.L. May 21, 2025) (court found that software constituted a product in the strict liability context); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 510, 551 (N.D. Ill. 2019) (court declined to conclude that software does not constitute a tangible good as a matter of law); *Advent Sys. Ltd. v. Unisys Corp.*, 925

4

F.2d 670, 675-76 (3d Cir. 1991) ("The topic has stimulated academic commentary with the majority espousing the view that software fits within the definition of a 'good' in the U.C.C."). And Constrafor cites no case holding that software is not a "product" for purposes of the Sales Representative Act other than cases that rely on the obsolete holding of the Illinois Supreme Court. Contrary to Constrafor's argument, Penzick has plausibly alleged that Constrafor produces "products," and is thus a "principal" for purposes of the Act.

In passing, Constrafor contends that the Early Payment Program "appears to be a financing service." R. 9 at 10. Penzick alleges that Constrafor sold software and financing to construction companies. Although the complaint does not allege any detail about what the Early Payment Program is, it is equally plausible that it is a software product or a financing service. And Penzick also alleges that he only sold software. This is sufficient to plausibly allege that he was owed a commission for selling a product covered by the Act when he sold an "EPP."

## Conclusion

Therefore, Constrafor's motion to dismiss [8] is denied.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

DATED: January 29, 2026

5